**UNTON ANDREWS KURTH LLP**
Emily Burkhardt Vicente (SBN 263990)
ebvicente@huntonak.com
M. Brett Burns (SBN 256965)
mbrettburns@huntonak.com
50 California Street, Suite 1700
San Francisco, California 94111
Telephone: 415 • 975 • 3700
Facsimile: 415 • 975 • 3701

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LATISHMA NARAYAN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CENTURY THEATRES, INC.; CINEMARK USA, INC.; CINEMARK; US101 CENTURY THEATRES INC.; CINEARTS; TINSELTOWN; RAVE CINEMAS; and DOES 1 through 50, inclusive,<br><br>　　　　　Defendants. | Case No.<br><br>[Removed from San Mateo County Superior Court, Case No. 24-CIV-08145]<br><br>**DEFENDANTS' NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, AND 1453**<br><br>[*Civil Cover Sheet; Certification of Conflicts and Interested Entities or Persons; and Certificate of Service Filed Concurrently Herewith*]<br><br>Complaint Filed:  December 19, 2024<br><br>JURY TRIAL DEMAND |

*Hunton Andrews Kurth LLP*
*50 California Street, Suite 1700*
*San Francisco, California 94111*

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA:**

**PLEASE TAKE NOTICE** that Defendants CENTURY THEATRES, INC. AND CINEMARK, USA, INC., on behalf of themselves and the other named entities which are their d/b/a's (collectively "Defendants" or "Cinemark") hereby remove the state court action described below to this Court pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453. In support thereof, Defendants states as follows:

1. On December 19, 2024, Plaintiff Latishma Narayan ("Plaintiff") filed a lawsuit in the Superior Court of San Mateo County, California as Case No. 24-CIV-08145 (the "State Action").

2. On December 27, 2024, Plaintiff served the registered agents for service of process of Century Theatres, Inc. And Cinemark, USA, Inc. with copies of the Summons and Complaint. Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of the Summons and Complaint is attached as **Exhibit A**.

3. Based on averments by Plaintiff's process server filed in the State Action, Plaintiff purports to have served named defendants "Cinemark," "US101 Century Theatres Inc.," "Cinearts," "Tinseltown," and "Rave Cinemas," (each sued as an "entity of unknown form,") on December 27, 2024, through substituted service. "Cinemark," "US101 Century Theatres Inc.," "Cinearts," "Tinseltown," and "Rave Cinemas" are not separate corporate entities from Cinemark USA, Inc. and Century Theatres, Inc. and are either defunct entities or merely d/b/a's of Cinemark USA, Inc. or Century Theatres, Inc.

**DEFENDANTS HAVE SATISFIED THE PROCEDURAL**

**REQUIREMENTS FOR REMOVAL**

4. Defendants were served with the Complaint on December 27, 2021. *See* Cal. Code Civ. Proc. § 415.30(c). Cinemark's Notice of Removal is, therefore, timely because it is filed within 30 days of the date of service of the Complaint. *See* 28 U.S.C. § 1446(b).

5. Defendants remove this action to the United States District Court for the Northern District of California because Plaintiff filed the State Action in this judicial district. *See* 28 U.S.C. § 1441(a).

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

6. Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon Defendants, are attached as follows:

    a. **Exhibit A** – Plaintiff's Summons and Complaint;

    b. **Exhibit B** – Defendants' Answer;

    c. **Exhibit C** – Other Process, Pleadings, and Orders.

7. Pursuant to 28 U.S.C. §1446(d), a copy of this Notice of Removal is being served upon Plaintiff's counsel and a copy is being filed with the Clerk of the Superior Court of San Mateo County, California.

8. _Divisional Assignment_. Pursuant to Local Rules 3-2(d) and 3-5(b), this case is assigned to the San Francisco Division or Oakland Division because it was filed in San Mateo County. L.R. 3-2(d) ("Except as provided in Civil L.R. 3-2(c), all civil actions which arise in the counties of Alameda, Contra Costa, Marin, Napa, San Francisco, San Mateo or Sonoma shall be assigned to the San Francisco Division or the Oakland Division.").

9. Pursuant to Local Rule 3-15, Defendants are filing a Certification of Conflicts and Interested Entities or Persons concurrently with this Notice of Removal.

## REMOVAL IS PROPER BECAUSE THIS COURT
## HAS ORIGINAL DIVERSITY JURISDICTION UNDER CAFA

10. The Class Action is a civil action over which this Court has original jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), Pub. L. No. 109-2 (enacted Feb. 18, 2005) (codified as 28 U.S.C. §§ 1332(d), 1453, 1711-1715). Pursuant to CAFA, federal courts have original jurisdiction over a class action if: (i) it involves 100 or more putative class members; (ii) any class member is a citizen of a state different from any defendant; and (iii) the aggregated amount in controversy exceeds $5 million, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d).

11. As set forth more fully below, this Court has subject matter jurisdiction over this putative class action because this action meets the requirements set forth in 28 U.S.C. § 1332(d). More specifically: (i) there are more than 100 members in Plaintiff's proposed class; (ii) Plaintiff and members of the putative class have a different citizenship than Cinemark USA, Inc., a defendant in this action; and (iii) the amount at issue on the claims of the proposed class exceeds the sum or value

of $5 million in the aggregate, exclusive of interest and costs.  Thus, this Court has subject matter jurisdiction over this action on this alternative basis as well.

**A.    This Class Action Involves More Than 100 Putative Members**

12.    The requirement that Plaintiff's proposed class have more than 100 members is met here. Specifically, Plaintiff proposes a class consisting of "[A]ll individuals employed by Defendants within the State of California at any time within four (4) years of the filing of this lawsuit." (Complaint ¶ 34.)

13.    Between December 19, 2020 and the present, Defendants employed in excess of 100 non-exempt employees in California.

14.    Plaintiff's class allegations aver that Defendants employ or employed "more than 100 individuals within the State of California," during the time period relevant to this lawsuit, and further alleges that "employee turnover … increases this number substantially." (Complaint ¶¶ 38-39.)

**B.    The Diversity of Citizenship Requirement Is Satisfied**

15.    The required diversity of citizenship also exists. Under CAFA, diversity exists if "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332. Here, at least one Plaintiff and/or member of the putative class is a citizen of a different state than Defendant Cinemark USA, Inc.

16.    Plaintiff is a citizen and resident of the State of California.  During her employment with Century Theatres, Inc., Plaintiff lived at an address in South San Francisco, California, and Plaintiff continues to reside at that address and has an intent to remain in California.  At all relevant times, Plaintiff has resided and been domiciled in California (Complaint ¶¶ 2, 4), and she intends to remain a resident of California. Thus, for purposes of diversity jurisdiction, Plaintiff is a citizen of California.[1]  *Kantor v. Wellesley Galleries, Ltd.,* 704 F.2d 1088, 1090 (9th Cir. 1983).

17.    Defendant Cinemark USA, Inc. is not a citizen of California.  Pursuant to 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." The phrase "principal place

---

[1] In addition, the putative class includes current employees of Defendants who presently reside in California and who intend to remain in California and continue working for Defendants in California.

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

1  of business" in 28 U.S.C. § 1332(c)(1) refers to the place where a corporation's high-level officers
2  direct, control, and coordinate the corporation's activities, *i.e.*, its "nerve center," which typically will
3  be found at its corporate headquarters. *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010).

4  18.  Cinemark USA, Inc. is incorporated in Texas and its principal place of business is
5  Texas where its corporate headquarters are located, and from where its high-level officers work and
6  direct, control and coordinate Defendants' activities. (*See* Complaint ¶ 6.) Thus, for removal purposes,
7  Cinemark USA, Inc. is a citizen of Texas, <u>not</u> California.

8  19.  Although Plaintiff has also named as entities of "unknown form," Cinemark, US101
9  Century Theatres, Inc., Cinearts, Tinseltown, Rave Cinemas, and Does 1 through 50, "[f]or purposes
10  of removal under this chapter, the citizenship of defendants sued under fictitious names shall be
11  disregarded." 28 U.S.C. § 1441(b)(1); *see also Fristos v. Reynolds Metals Co.*, 615 F.2d 1209, 1213
12  (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition). *See also supra,*
13  n.1. Thus, the existence of "Doe" defendants does not deprive the Court of jurisdiction.

14  20.  Plaintiff has named defendant Century Theatres, Inc. as a California corporation, but
15  acknowledges its principal executive offices are located in Plano, Texas. (Complaint ¶ 5.)

16  21.  Accordingly, at least one Plaintiff and/or member of the putative class has a different
17  citizenship than Cinemark USA, Inc., a defendant to this action, and the requisite minimal diversity of
18  citizenship therefore exists pursuant to 28 U.S.C. § 1332(d)(A).

19  **C.  The Amount in Controversy Requirement Is Satisfied**

20  22.  The amount in controversy also exceeds the requisite sum or value of $5 million,
21  exclusive of interest and costs. Where removal is based on diversity of citizenship and the complaint
22  seeks a money judgment but does not demand a specific sum, "the notice of removal may assert the
23  amount in controversy," 28 U.S.C. 1446(c)(2), and a removing defendant "need include only a
24  plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*
25  *Cherokee Basin Operating Co,* 574 U.S. at 89; *Moe v. GEICO Ind. Co.*, 73 F.4th 757, 762 (9th Cir.
26  2023) (defendant need only make a plausible allegation that the amount in controversy exceeds the
27  jurisdictional threshold); *Arias v. Residence Inn By Marriott, Ltd.*, 936 F.3d 920, 922 (9th Cir. 2019)
28  (in CAFA removal cases, "a removing defendant's notice of removal need not contain evidentiary

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

1  submissions but only plausible allegations of the jurisdictional elements.") (internal quotations

2  omitted); *see also Garcia v. William Scotsman, Inc.*, 2024 WL 4289895, at *2 (C.D. Cal. Sept. 25,

3  2024).

4      23.    Because the Complaint does not specify the amount of damages sought, Defendants

5  need only plausibly allege the facts that support a finding of the requisite amount in its Notice of

6  Removal.  *Arias*, 936 F.3d at 922; *see also Dart Cherokee*, 574 U.S. at 89.  If the plaintiff contests

7  these allegations, evidence establishing the amount in controversy is required in connection with a

8  motion to remand. *Ibarra v. Manheim Invests., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

9      24.    In measuring the amount in controversy, the Court must assume that the allegations of

10  the Complaint are true and that a jury will return a verdict in favor of the plaintiffs on all claims

11  asserted in the Complaint.  *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d

12  993, 1001 (C.D. Cal. 2002).  The ultimate inquiry is the amount that is put "in controversy" by the

13  Complaint, and not how much, if anything, the defendant will actually owe.  *Rippee v. Boston Mkt.*

14  *Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005) (*citing Schere v. Equitable Life Assurance Soc'y of*

15  *the United States*, 347 F.3d 394, 399 (2d Cir. 2003) (recognizing that the ultimate or provable amount

16  of damages is not what is considered in the removal analysis; rather, it is the amount put in controversy

17  by the plaintiff's complaint).

18      25.    Although Defendants deny the validity and merit of Plaintiff's claims and allegations,

19  and deny that Plaintiff or the putative class she seeks to represent are entitled to any relief, Plaintiff's

20  claims establish an amount "in controversy" in excess of the jurisdictional minimum of five million

21  dollars, exclusive of interest and costs, as set forth below.

22      a.    *Unpaid Minimum Wages*.  Plaintiff alleges Defendants had a "consistent policy

23  of … failing to pay Employees for all hours worked." (Complaint ¶ 46.)  Plaintiff's alleges support for

24  this claim by pointing to class members' alleged work during meal breaks, off-the-clock time

25  performing work tasks "pre-shift" and "post-shift," waiting in time-clock lines, and responding to

26  phone calls and text messages while off-the-clock, as well as unpaid on-call or standby pay. (*Id.*).

27  Plaintiff also alleges Defendants' failure to pay minimum wages entitles employees to recover "unpaid

28  minimum wages (including double minimum wages), liquidated damages in an amount equal to the

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

minimum wages unlawfully paid, interest thereon and reasonable attorney's fees. (Complaint ¶ 53.) While Plaintiff's foundation for recovery of both "double minimum wages" and "liquidated damages" is unclear, and even though Defendants would be entitled to assume (for calculating the amount in controversy) ten minutes of unpaid wages owed at the minimum wage per workweek, as courts have found such assumption reasonable, *e.g.*, *Garcia*, 2024 WL 5289895, at *4, for purposes of this Notice of Removal, Defendants assume only one *minute* of allegedly unpaid minimum wage worked per workweek. If putative class members worked one additional *minute* per workweek and were not compensated for that time at the minimum wage, as is consistent with Plaintiff's allegations that, among other things, putative class members were required to work during meal and/or rest periods, to perform pre-shift and post-shift work off-the-clock, and wait in lines to use the timeclock, all allegedly without compensation, a conservative estimate for this claim is approximately $160,178, not including liquidated damages. This figure is arrived at by calculating the per minute compensation called for by California's current minimum wage of $16.00/hour ($16/60 minutes = $0.267 per minute) and multiplying that amount by 1 minute and the number of workweeks in the class period (estimated to exceed 250,000).[2] Because Plaintiff also seeks liquidated damages in an amount equal to unpaid minimum wages (*see* Complaint ¶ 53), the amount in controversy on Plaintiff's unpaid minimum wage claim is doubled to approximately **$320,356.**

        b.    *Failure to Provide Meal Periods*. Plaintiff alleges that class members "regularly worked shifts greater than five (5) hours and greater than ten (10) hours" and "were consistently denied" meal periods. (Complaint ¶ 62; *see also id.* ("Defendants had a consistent policy and practice" of alleged instruction class members to clock out and continue working). Plaintiff also alleges that "[w]hat meal periods were provided were … not duty free." (*Id.*) Moreover, Plaintiff alleges that, where Defendants "did pay meal period premiums" for alleged meal period violations, they did not pay those premiums at the correctly calculated regular rate. (Complaint ¶ 63.)

---

[2] Even if lower minimum wage rates are used in this analysis given that the relevant class period spans several years with increasing minimum wage rates each year, Cinemark USA, Inc. has shown the amount in controversy needed for CAFA jurisdiction is easily met. *See infra*, ¶¶ 25(b)-(h), 26.

DEFENDANTS' NOTICE OF REMOVAL OF ACTION

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

Where, as here, a plaintiff alleges a pattern and practice of failing to provide meal periods, a defendant may make reasonable assumptions for purpose of calculating the amount in controversy of a meal period claim.  Although Plaintiff seemingly limits recovery to class members where a "meal period [was] not provided or [was] deficiently provided," Plaintiff's Complaint makes clear that she alleges (i) a consistent policy and practice of work during meal periods, (ii) what meal periods were provided were allegedly "not duty-free," (iii) all premiums paid by Defendants for alleged meal period violations were inadequate, and (iv) class members "regularly worked" more than five hours (and indeed, more than ten hours) in a given shift without receiving a second meal period as required.  (*Id.* ¶¶ 61-64.)

Although Plaintiff's broad pattern and practice allegations would support an assumed violation rate of 100% of eligible shifts, Defendants can plausibly allege the amount in controversy by assuming (solely for purposes of calculating the amount in controversy) that Plaintiff and putative class members are alleged to have suffered one meal period violation per week on average, an extremely conservative estimate applicable to policy and practice allegations.  *See, e.g.*, *Garcia v. William Scotsman Inc.*, 2024 WL 5289895, at *5-6 (C.D. Cal. Sept. 24, 2024); *Rivas v. U.S. Aviation Servs. Corp.*, 2024 WL 4133023, at *4 (C.D. Cal. Sept. 9, 2024); *La Grow v. JetBlue Airways Corp.*, 2024 WL 3291589, at *4 (C.D. Cal. July 3, 2024). Here, the putative class worked, on average, more than six (6) hours each day and also worked approximately 18 hours per workweek, meaning every employee averaged at least three (3) workdays per workweek.  One meal period violation per workweek therefore equates to a 33% frequency based on the average daily and weekly hours for the putative class, which is reasonable under Plaintiff's "consistent" violation theories.

A conservative estimate of the amount in controversy for this claim exceeds **$4,000,000**.  This figure is arrived at assuming only one alleged meal period violation per workweek and multiplying the number of aggregate workweeks worked by the class (at least 599,919) by one (1) hour of premium pay at $16.87, which is the average hourly rate of pay for members of the putative class during the relevant time period (i.e., $16.87 x 1 hour x 250,000 = $4,217,500).

**c.**    *Failure to Provide Rest Periods*. Plaintiff alleges that class members "consistently worked consecutive four (4) hour shifts" and were entitled to rest breaks of not less than

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

ten minutes per four hour shift.  (Complaint ¶ 66.) Plaintiff alleges failure to provide those rest breaks and, moreover, that what rest breaks were provided "were not duty-free due to Defendants' policy and practice of interrupting rest breaks with work demands."  (*Id.* at ¶ 67.) Plaintiff also alleges the rest break premiums paid for inadequately provided rest breaks was paid by Defendants at an incorrect rate of pay.  (*Id.* at ¶ 68.) As a result, Plaintiff seeks damages "in an amount equal to one (1) hour of wages at their effective hourly rates of pay for each day worked without the required rest breaks." (*Id.* at 69.) Although Plaintiff's broad pattern and practice allegations would support an assumed violation rate of 100% of rest breaks owed (i.e., at least one rest break violation per shift), Defendants can plausibly allege the amount in controversy by assuming (solely for purposes of calculating the amount in controversy) that Plaintiff and other putative class members allegedly missed one rest break on average during a three-day workweek (i.e., a 17% violation rate).[3]  *See, e.g.*, *Garcia v. William Scotsman Inc.*, 2024 WL 5289895, at *5-6 (C.D. Cal. Sept. 24, 2024); *Rivas v. U.S. Aviation Servs. Corp.*, 2024 WL 4133023, at *4 (C.D. Cal. Sept. 9, 2024); *La Grow v. JetBlue Airways Corp.*, 2024 WL 3291589, at *4 (C.D. Cal. July 3, 2024); *Zamora v. Penske Truck Leasing Co., L.P.*, 2020 WL 4748460, at *5 (C.D. Cal. Aug. 17, 2020) ("assumed violation rate of 10% is reasonable in light of Plaintiffs' allegations that [defendant] engaged in a 'policy and practice' of various labor law violations"). A conservative estimate for this claim is approximately **$4,000,000**  This figure is arrived at assuming only one alleged rest break violation per workweek, multiplying 250,000 aggregate workweeks by one (1) hour of premium pay at the average hourly rate of $16.87 (i.e., $16.87 x 1 hour x 250,000 = $4,217,500).

        d.    *Unpaid Overtime Wages*.  Plaintiff alleges that "Defendants had a consistent policy of not paying Employees wages for all hours worked including time off the clock working 'pre-shift' and 'post-shift' without compensation by completing tasks before clocking in and after clocking out, waiting in line to access time clocks in order to clock in at the start of shifts, and being required to respond to phone calls and texts received while off-the-clock." (Complaint ¶ 55; *see also id.* at 23

---

[3] As indicated above, putative class members worked on average more than six (6) hours per day, in a three day workweek.  Under Plaintiff's theories, the average class member would therefore be entitled to two rest breaks daily, or six rest breaks per week.  If a class member experiences a single rest break violation per workweek, the alleged frequency rate is approximately 17%.

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

("consistent policy or practice of failing to pay … overtime compensation at premium overtime rates").) Plaintiff also alleges "Employees regularly worked over 8 hours on a given day or over 40 hours in a given week without receiving overtime compensation," alleged to be "substantial," and "did not pay … the correct overtime rate for the recorded overtime hours that they generated." (*Id.* at ¶¶ 20, 55-56; *see also id.* at ¶ 19 (alleging Defendants paid "a lower overtime rate than required"), 20 (alleged violations were "a matter of uniform Company policy") 21 (alleged unpaid overtime is "a result of … daily work demands and pressures to work through breaks"); 62 ("regularly required to work more than 10 hours in a given shift").   Based on an estimate of even just **one minute** of unpaid overtime compensation each workweek, which is far less than estimates other courts have indicated are "routinely endorsed" by courts for determining the amount in controversy, a conservative estimate for this claim based on Plaintiff's allegations therefore is approximately **$35,000**.   *See, e.g., Garcia v. William Scotsman Inc.*, 2024 WL 5289895, at *4 (C.D. Cal. Sept. 24, 2024) (reasonable to calculate amount in controversy on minimum wage and overtime claims at 10 minutes of "off-the-clock work" per week). This figure is calculated using the half-time premium (x 0.5) of the average rate of pay for the putative class ($16.87), and dividing the resulting hourly overtime premium ($8.44) by 60 minutes to obtain the overtime premium rate for **one minute** of unpaid overtime ($0.14).   That amount per minute is then multiplied by the aggregate number of workweeks worked by members of the putative class during the alleged class period, estimated from Defendants' business records to exceed 250,000 workweeks, for a total of $35,000.

        e.    *Failure to Pay Wages Due at Termination of Employment (Waiting Time Penalties)*.   Plaintiff also alleges that putative class members who have terminated their employment were owed (and are still owed) pay for overtime, minimum wages, missed meal and rest breaks, unpaid vacation and sick leave pay,[4] and other amounts, even if their final paychecks were otherwise timely delivered.  (Complaint ¶¶ 98-100.)  Thus, solely for purposes of calculating the amount in controversy,

---

[4] Plaintiff's allegations that Defendants underpaid sick leave and vacation pay (Complaint ¶¶ 18-19, 71-72, 75-76) further support Cinemark's calculation of the amount in controversy. Defendants estimate that it paid sick leave to more than 5,000 non-exempt employees during the relevant time period, who if entitled to waiting time penalties, would be sufficient, on its own, to establish CAFA's threshold.

DEFENDANTS' NOTICE OF REMOVAL OF ACTION

"it is completely reasonable to assume waiting time penalties accrued to the thirty-day limit because of those unpaid sums." *De Vega v. Baxter Healthcare Corp.*, 507 F. Supp. 3d 1214, 1218 (N.D. Cal. 2019).  Here, between December 19, 2021 and the present, more than 5,000 non-exempt employees ended their employment with Defendants.  Thus, a reasonable calculation of the amount in controversy on Plaintiff's failure to pay wages timely upon termination claim is approximately **$12,146,400**, which is calculated by multiplying the number of terminated employees between December 19, 2021 and the present (which exceeds more than 4,000 former employees during the relevant time period), by the average rate of hourly pay ($16.87) and the average daily hours worked exceeding six (6) hours, for 30 days of alleged continuing wages.

   f. *Failure to Provide Accurate Itemized Statements*. Plaintiff's Eighth Cause of Action alleges failure to provide accurate itemized wage statements in writing to class members. (Complaint ¶ 84.) Plaintiff alleges the wage statements provided by Defendants failed to accurately account for wages, overtime, and premium pay, reflected incorrect hours worked, and failed to include total hours worked and all applicable hourly rates of pay in effect during the pay period with the corresponding number of hours at each rate. (*Id.*) Plaintiff also alleges each wage statement provided to class members was "confusing and required Employees to engage in discovery and refer to outside sources to verify whether their pay was correct." (*Id.*)

  Under Labor Code section 226(e), in the absence of a good faith dispute or intentional violation, an employer owes $50 per initial pay period and $100 for each subsequent pay period when it fails to provide complete and accurate wage statements to employees as required, with a maximum penalty of $4,000 per employee.  Because Plaintiff's allegation that Defendants failed to provide accurate itemized wage statements is both derivative of Plaintiff's unpaid minimum wage and overtime claims, and "[b]ecause the baseline assumptions of one [minute] of unpaid minimum wage and one [minute] of unpaid overtime per week are reasonable, Defendant's calculations for wage statement violations are also reasonable." *Garcia*, 2024 WL 5289895, at *4; *De Vega*, 507 F. Supp. 3d at 1218 (reasonable assumption that class members "virtually all hold wage statement penalty claims"); *Wicker v. ASC Profiles LLC*, No. 2:19-cv-02443-TLN-KJN, 2021 WL 1187271, at *4 (E.D. Cal. Mar. 30, 2021).  Further, Plaintiff alleges that every wage statement provided to class members

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

within the applicable relevant time period was "confusing" and lacked the elements required by Labor Code § 226(a). Thus, Defendants reasonably calculate the amount in controversy on Plaintiff's wage statement violation claim as approximately **$6,250,000** which is calculated by multiplying the estimated number of wage statements issued to putative class members exceeding 125,000 individual wage statements between December 19, 2021 and the present (the time period applicable to Plaintiff's wage statement claim for penalties) by $50 (125,000 x $50 = $6,250,000).

g.    *Attorneys' Fees*.  When the underlying substantive law provides for an award of attorneys' fees, a party may include that amount in their calculation of the amount in controversy. *See Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 788 (9th Cir. 2018) ("We conclude that if a plaintiff would be entitled under a contract or statute to future attorneys' fees, such fees are at stake in the litigation and should be included in the amount in controversy."); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998); *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 979 (9th Cir. 2005) ("The amount in controversy includes the amount of damages in dispute, as well as attorney's fees, if authorized by statute or contract.").  Plaintiff's Complaint requests attorneys' fees in this action.  Applying the 25% attorneys' fee benchmark to Plaintiff's claims for unpaid overtime, unpaid minimum wages, and inaccurate wage statements adds more than $1,500,000 to the amount in controversy. For purposes of this removal, however, Defendants estimate the amount in controversy for Plaintiff's attorneys' fees at half that amount ($750,000), or 12% of the estimated minimum wage, overtime and wage statement damages.  *See, e.g., Garibay v. Archstone Cmtys. LLC*, 539 Fed. App'x 763, 764 (9th Cir. 2013) (establishing 25% benchmark award for attorneys' fees for the purpose of calculating the amount in controversy).

26.    **Total Amount In Controversy.** Based on the foregoing, it is apparent that the amount in controversy requirement is plainly met, and removal to this Court is proper under diversity of citizenship jurisdiction.  For the convenience of the Court, the amounts in controversy solely based on Plaintiff's allegations are depicted below:

| **Cause of Action** | **Amount in Controversy** |
| --- | --- |
| Minimum Wage (incl. liquidated) | $    66,750 |
| Meal Period | $ 4,000,000 |

DEFENDANTS' NOTICE OF REMOVAL OF ACTION

| Rest Period | $ 4,000,000 |
|---|---|
| Overtime | $     35,000 |
| Untimely Final Wages | $12,146,400 |
| Wage Statements | $ 6,250,000 |
| Attorneys' Fees (based on claims for unpaid overtime, unpaid minimum wages, and inaccurate wage statements, only) | $   750,000 |
| **TOTAL:** | **$27,248,150** |

27.    Using conservative assumptions that are reasonable in light of the allegations of the Complaint, it is apparent that **it is more likely than not that the total amount in controversy exceeds $5 million.**  Accordingly, the amount in controversy requirement for federal jurisdiction under CAFA is satisfied.

WHEREFORE, Cinemark USA, Inc. hereby removes this State Action from the Superior Court of California, County of San Mateo, to this Court, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453.

DATED:  January 24, 2025                          HUNTON ANDREWS KURTH LLP

By: */s/ Emily Burkhardt Vicente*
              Emily Burkhardt Vicente
              M. Brett Burns
              Attorneys for Defendants
              Century Theatres, Inc. and
              Cinemark USA, Inc.